# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JAMES W.[1]**, | Case No. 1:22-cv-1122-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

Betsy R. Shephard, 425 Riverwalk Manor Drive, Dallas, GA 30132. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Shannon Fishel, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff James W. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) under Title II and supplemental security income (SSI) under Title XVI of the Social Security Act (Act). For the reasons stated below, the Court remands for a finding of disability and the payment of benefits.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case.

## STANDARD OF REVIEW

The decision of the administrative law judge (ALJ) is the final decision of the Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the ALJ on a ground upon which the ALJ did not rely. *Id.*; *see also Bray*, 554 F.3d at 1225.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff protectively filed for DIB and SSI benefits on February 2, 2017, alleging disability beginning on November 17, 2005. AR 174-75, 176-84. Plaintiff's date of birth is October 13, 1985, and he was 20 years old at the time of his alleged disability onset date. AR 58.

The agency denied Plaintiff's application, and he requested a hearing before an administrative law judge (ALJ). AR 58-67. ALJ Elizabeth Watson held a video hearing on February 15, 2019. AR 575-601. At the hearing, Plaintiff amended his alleged disability onset date to December 1, 2016, making him 31 years old as of his amended disability onset date. ALJ Watson issued a decision on March 5, 2019, finding Plaintiff not disabled. AR 13-23. Plaintiff appealed and U.S. Magistrate Judge Stacie F. Beckerman reversed and remanded for further proceedings. AR 569. Judge Beckerman concluded that ALJ erred in discounting Plaintiff's testimony and the opinion of Plaintiff's treating physician.

Upon remand, ALJ Mark Triplett (the ALJ) held another video hearing on December 20, 2021. AR 475. Plaintiff appeared with counsel, along with a vocational expert. On March 26, 2022, the ALJ issued a decision finding Plaintiff not disabled from the amended onset date of disability through the date of decision. AR 475-85. Plaintiff appeals to this Court for the second time for judicial review of the final agency action.

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Keyser*, 648 F.3d at 724-25. Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Tackett*, 180 F.3d at 1099; *see Bustamante*, 262 F.3d at 954.

## C.  The ALJ's Decision

As a preliminary matter for Plaintiff's DIB claim, the ALJ concluded that Plaintiff met the insured status of the Act through December 31, 2021. AR 477. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity after his alleged onset date of December 1, 2016. *Id.* At step two, the ALJ determined that Plaintiff suffered severe impairments of cervical and lumbar degenerative disc disease, right shoulder degenerative joint disease, neuropathy, asthma, and complex regional pain syndrome (CRPS). *Id.* At step three, the ALJ determined that Plaintiff has no impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 478.

The ALJ next determined Plaintiff's Residual Functional Capacity (RFC) and found that Plaintiff could

> lift and carry 10 pounds occasionally, and less than 10 pounds
> frequently, stand and walk six hours in an eight-hour day, and sit
> for six or more hours in an eight-hour day. The claimant can
> occasionally push/pull, reach, and handle with the right,
> nondominant upper extremity. He can occasionally reach overhead
> with the left, dominant, upper extremity. He can occasionally
> climb ramps and stairs, but never climb ladders, ropes, or
> scaffolds. The claimant can frequently balance, but occasionally
> kneel, crouch, and crawl. He can tolerate occasional exposure to
> atmospheric conditions as defined in Selected Characteristics of
> Occupations.

AR 478-83.

At step four, based on the limitations outlined in the RFC, the ALJ determined that Plaintiff could not perform any past relevant work. AR 484. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, which include callout operator (4,600 jobs in the national economy), phone solicitor (114,000 jobs in the national economy), and charge account clerk (32,000 jobs in the national economy). AR 484-85. Thus, the ALJ concluded that Plaintiff was not disabled. AR 485.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) improperly rejecting the medical opinions of Dr. Christian Holland, DO; (2) improperly rejecting Plaintiff's subjective symptom testimony; and (3) lacking substantial evidence to support step five findings. The Commissioner's response is not a model of clarity. The Commissioner expressly concedes that the ALJ erred at step five by failing to reconcile inconsistencies between the Dictionary of Occupational Titles and the testimony of the vocational expert regarding two of the three positions identified, leaving only the callout operator position. The Commissioner admits that this position does not exist in significant numbers in the national economy. The Commissioner does not concede the other errors alleged by Plaintiff. The Commissioner does not directly address them in terms of

admitting or conceding error. In the portion of the brief explaining why the record requires

further development for the one error conceded by the Commissioner, however, the

Commissioner offers substantive arguments defending the ALJ's analysis in discounting

Dr. Holland's medical opinion. The Commissioner also contends in this section that the RFC was

supported by evidence that was inconsistent with Plaintiff's subjective testimony, which the

Court construes as argument defending the ALJ's analysis of Plaintiff's testimony. Thus, the

Court evaluates whether the ALJ also erred as Plaintiff contends in evaluating Dr. Holland's

opinion and Plaintiff's subjective testimony before addressing the appropriate type of remand.

**A.  Dr. Holland's Opinion**

**1.  Applicable Standards**

The law of the Ninth Circuit at the time of Plaintiff's application distinguished between

the opinions of three types of physicians: treating physicians, examining physicians, and non-

examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a

treating physician's opinion carries more weight than an examining physician's, and an

examining physician's opinion carries more weight than a reviewing physician's." *Holohan v.*

*Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). "An ALJ may only reject a treating physician's

contradicted opinions by providing 'specific and legitimate reasons that are supported by

substantial evidence.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting *Ryan v.*

*Comm'r of Soc. Sec.* 528 F.3d 1194, 1198 (9th Cir. 2008)). "An ALJ can satisfy the 'substantial

evidence' requirement by 'setting out a detailed and thorough summary of the facts and

conflicting clinical evidence, stating his interpretation thereof, and making findings.'"

*Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He

must set forth his own interpretations and explain why they, rather than the doctors', are correct."

*Id.* "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citing *Nguyen v. Chater,* 100 F.3d 1462, 1464 (9th Cir. 1996)).

### 2. Analysis

Dr. Holland first evaluated Plaintiff in May 2016. AR 238. Dr. Holland diagnosed Plaintiff with CRPS on December 26, 2017, after ruling out cervical radiculopathy as the source of Plaintiff's chronic right arm pain. AR 423-427. On February 4, 2019, Dr. Holland completed a medical source statement disability assessment form provided by Plaintiff's counsel. AR 467-71. Dr. Holland stated that "[Plaintiff] has pain, intermittent swelling and intermittent redness" of his upper right extremity, which are symptoms consistent with his prior CRPS diagnosis. AR 471. Dr. Holland also opined that Plaintiff would be absent from work three days per month as a result of Plaintiff's purported severe impairment. AR 470.

The ALJ rejected Dr. Holland's opinion as inconsistent with his own treatment notes and observations. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (concluding that a doctor's notes and other recorded observations that contradict the doctor's submitted disability opinion are sufficient to discount the doctor's opinion). The ALJ discredited Dr. Holland's opinion because (1) Dr. Holland did not objectively witness one of Plaintiff's symptoms but merely relied on Plaintiff's subjective testimony; (2) Dr. Holland's statement about Plaintiff's exertion level was inconsistent with the number of days Plaintiff would be absent from work each month; and (3) Dr. Holland did not document signs of atrophy consistent with disuse. AR 483.

For the first reason, the ALJ focused on one of Plaintiff's CRPS symptoms—skin redness. To support a CRPS diagnosis, a physician must document one or more of the CRPS

symptoms: (1) swelling; (2) autonomic instability (changes in skin color or texture, changes in sweating or skin temperature, or abnormal pilomotor erection); (3) abnormal hair or nail growth (either too slow or too fast); (4) osteoporosis; or (5) involuntary movements of the affected region of the initial injury. AR 481. In addition, Social Security Ruling (SSR) 03-2p states:

> When longitudinal treatment records document persistent limiting pain in an area where one or more of these abnormal signs has been documented at some point in time since the date of the precipitating injury, disability adjudicators can reliably determine that RSDS/CRPS is present and constitutes a medically determinable impairment. It may be noted in the treatment records that these signs are not continuously, or the signs may be present at one examination and not appear at another. Transient findings are characteristic of RSDS/CRPS, and do not effect a finding that a medically determinable impairment is present.

2003 WL 22399117, at *4.

The ALJ agreed with Dr. Holland's determination that CRPS was a medically determinable and severe impairment at step two of the sequential analysis. AR 477. The ALJ also properly noted that redness is a symptom of CRPS. AR 481. The ALJ, however, stated: "Dr. Holland's notes show that claimant reported skin discoloration of the right upper extremity in December 2020 but specifically noted that he did not visualize any color or swelling changes *that day*." *Id.* (citing AR 790-792) (emphasis added). Although the ALJ cites SSR 03-2p in his analysis, the ALJ failed to properly reflect in his ruling that symptoms need not be present at every examination.

During three examinations that Dr. Holland conducted in 2018 and 2019, Dr. Holland observed swelling on Plaintiff. AR 411, 424, 426. Swelling is a symptom of CRPS. *See* AR 480-481 (noting the signs and symptoms of CRPS). Dr. Holland satisfied the requirements described in SSR 03-2p when he observed a CRPS symptom—swelling—during his examinations and diagnosed Plaintiff with CRPS. *See* AR 467-71, 777. Although Dr. Holland did not witness skin

redness on Plaintiff on the examination in which Plaintiff reported he had been having redness during that period, Dr. Holland was not required, under SSR 03-2p, to witness Plaintiff's skin redness at that visit to diagnose CRPS. Thus, the ALJ erred in discounting Dr. Holland's opinion based on this purported inconsistency between Dr. Holland's opinion and observations and treatment notes.

For the second reason, in the medical source statement Dr. Holland checked the box that Plaintiff "has been" capable of performing "sedentary" work on a continuing basis (8 hours per day, 5 days per week). AR 467. He then opined as to significant functional limitations in Plaintiff's ability to stand, walk, sit, reach, handle, finger, participate in postural activities, and suffer exposure to environmental hazards. AR 468-70. Dr. Holland concluded by checking a final box that Plaintiff would be absent from work about three times per month. AR 470. The ALJ did not explicitly discount Dr. Holland's assessment of Plaintiff's functional limitations. The ALJ, however, discounted Dr. Holland's opinion generally based on the inconsistency between Dr. Holland's check on the box that Plaintiff "has been" able to work at the sedentary level and check on the box that Plaintiff would miss three days per month of work.

The Commissioner argues that "there is an inherent conflict between the ability to 'work on a regular and continuing basis, *i.e.,* 8 hours a day, 5 days a week, or an equivalent schedule'" and Plaintiff's absenteeism from work three days per week. The Court disagrees that the form as written supports that Dr. Holland's answers are inherently contradictory. The question regarding whether Plaintiff could work at a sedentary appears open-ended and backward-looking. It defines sedentary work and asks "YES, my patient <u>has</u> been capable of performing sustained SEDENTARY work on a regular and continuing basis, i.e., **8 hours a day, 5 days a week, or an equivalent work schedule.**" AR 467 (emphasis in original). The functional limitation questions,

in contrast, ask whether "my patient *is capable*" of performing certain tasks. AR 468-69
(emphasis added). The absenteeism question asks: "How often *are* the patient's medical
impairments sufficiently severe that the patient *would be* unable to complete a work day if the
patient had a full-time job requiring light or sedentary exertion?" AR 470 (emphasis added). The
form then asks if the *limitations* opined have lasted more than 12 months, to which Dr. Holland
answered yes, and the date on which they commenced, to which Dr. Holland opined
November 2016.

It is not evident that Dr. Holland was answering the sedentary question solely based on
the period of the *limitations*, post-November 2016. Based on how the question is written,
Dr. Holland could have been answering whether Plaintiff at *any* time "has been capable of
performing sustained sedentary work." The absenteeism question, on the other hand, is directed
at the period of disability. Thus, the two questions are not clearly contradictory.

Nor do the two questions appear to address the same area of evaluation, even if they were
addressing the same period. The first question assesses the level of exertion—whether a claimant
has been able to perform at any of the exertional levels. The form then asks about specific
functional limitations and then asks about absenteeism separately. The fact that certain functional
limitations may be inconsistent with a finding relating to the "sedentary" exertion level or that
absenteeism may be inconsistent with a finding of "sedentary" are separate issues. A medical
source is not a vocational source the Court expects to understand that in answering question one
that a person is or has been capable of performing sedentary work, that answer will have any
connotations relating to other functional category or absenteeism questions.

Finally, the ALJ discredited Dr. Holland's opinion because Dr. Holland did not document
signs consistent with atrophy based on the disuse of Plaintiff's right arm. AR 483. Dr. Holland,

however, opined on the medical source form that Plaintiff could "reach in any direction for five minutes at a time for a total of 90 minutes per day"; "handle for five minutes at a time for a total of 20 minutes per day"; and "finger 10 minutes at a time for a total of 20 minutes per day." AR 468-69. The Commissioner argues that such alleged disuse of Plaintiff's extremities after Plaintiff's onset date of December 1, 2016, would reasonably lead to atrophy of Plaintiff's right upper extremity. There is no support that the use opined by Dr. Holland would lead to atrophy of Plaintiff's muscle. The ALJ had noted that he could rely on Dr. Henderson's opinion that Plaintiff "[displayed] no corresponding atrophy as would be expected given the demonstrated lack of use," AR 482 (quoting AR 365), and concluded that Plaintiff's "lack of atrophy in the right upper extremity tends to negate [Plaintiff's] alleged degree of disuse."[2] *Id.* The ALJ, however, did not link this conclusion about atrophy relating to *Plaintiff's* alleged degree of disuse to *Dr. Holland's* opined degree of use or explain how *Dr. Holland's* opined limitations would be expected to lead to atrophy. Relying on Dr. Henderson's opinion does justify rejecting Dr. Holland's opinion without stating why Dr. Holland's opined limitations would in fact lead to atrophy. Dr. Holland's opined limitations consist of Plaintiff's ability to use his right (impaired) arm for a total of 130 minutes per day. The Commissioner relies on a social security regulation that states when a plaintiff's functional abilities are limited to "no more than a few minutes a day . . . signs of [atrophy]" would result. SSR 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017).[3] Dr.

---

[2] Judge Beckerman remanded with instructions for the ALJ to not rely on Dr. Henderson's opinion related to Plaintiff's "pain behaviors," but signs of atrophy do not fall within "pain behaviors." *See* AR 555-56.

[3] In addition, the Commissioner cites *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999). *Meanel* is distinguishable. In *Meanel*, "[the claimant] testified that she experienced constant pain that required her to lie in a fetal position all day and precluded her from performing virtually any type of work," thus leaving her totally incapacitated. *Id.* at 1114. The ALJ relied on a physician's opinion that the claimant did not exhibit atrophy consistent with a person who was "totally

Holland's opined 130-minute limitation does not equate to "a few minutes per day." Thus, the ALJ erred in discrediting Dr. Holland's opinion because he did not document atrophy of Plaintiff's right arm.

### B.  Plaintiff's Testimony

#### 1.  Standards

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6. There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

---

incapacitated." *Meanel*, 172 F.3d at 1114. Here, Dr. Holland's medical source statement only limits Plaintiff to 130 minutes per day of use, not total incapacitation.

### 2. Analysis

The Commissioner argues that the ALJ's RFC was supported by substantial evidence because Plaintiff's activities were inconsistent with his alleged limitations—specifically, his ability to work and his purported hunting. The Commissioner also argues that the RFC was supported by the objective medical evidence, which did not support Plaintiff's alleged limitations.

### a. Daily Living Activities

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See Molina*, 674 F.3d at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick*, 157 F.3d at 722 (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations").

Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The Commissioner argues that the ALJ's RFC was consistent with Plaintiff's ability to work for many years before the alleged disability onset date. The ALJ stated that "the claimant in fact worked for many years at a medium or greater capacity with complains [sic] of severe pain, paresthesias, and weakness." AR 481. Work history before the alleged onset date may be relevant if the claimant complained of the same symptoms during the period of work that the claimant alleges are disabling within the relevant time. *See, e.g.*, *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021); *Krainock v. Comm'r of Soc. Sec. Admin.*,  2023 WL 2869550, at *3 (D. Ariz. Apr. 10, 2023). Plaintiff, however, explained that his symptoms worsened. For example, at his first hearing he explained that he had a work injury that caused him to lose the ability to use his right arm and for which he filed a workers' compensation claim. AR 583. That injury was on November 10, 2016. AR 222. At his second hearing, he described how his symptoms worsened in 2016, including having balance issues, problems with his left leg, having dizziness, and that he began using his cane in 2016. AR 517. Thus, his symptoms before his alleged onset date were not the same and his work during that period is not a clear and convincing reason to discount his testimony.

The ALJ also relied on a purported statement Plaintiff made to his dermatologist in February 2018 about a rash, where Plaintiff stated he was a mechanic and the rash started after he was splashed by brake fluid. AR 482 (quoting AR 419). The Court finds no other evidence in the record to support this purported off-hand comment by Plaintiff that he was a mechanic in

2018. The record shows that Plaintiff generated no earnings from 2018 to indicate that Plaintiff

was *working* as a mechanic at that time, as opposed to working on his personal vehicle as a

mechanic or something similar. AR 186-89. Thus, this purported work experience does not

provide a clear and convincing reason to discredit Plaintiff's testimony.

In addition, the ALJ rejected Plaintiff's testimony because the ALJ found that Plaintiff

made contradictory statements about his hunting. AR 482. The ALJ stated that Plaintiff:

> reported hunting daily, specifically stating, "He does not want to
> put anything scented on his skin because he hunts everyday" (Ex.
> 12F) [AR 436]. [Plaintiff] asserted at hearing that this was taken
> out of context, stating that he was concerned about putting on a
> scented ointment daily because he hunts and did not mean that he
> hunts daily. He further stated that this consisted of car hunting.
> Whatever the frequency, this is inconsistent with the alleged
> degree of weakness and pain. [Plaintiff] initially stated that he did
> not hunt this past year but then testified that he went twice with a
> cousin in Klamath Falls. This necessitates travel of at least two
> hours. [Plaintiff] has also reported traveling out of state (Ex. 17F/
> 15-19) [AR 764-68]. While the above points are not directly
> indicative of non-disability, it is contradictory to his testimony that
> his activity consists merely of going outside to watch his dogs.

*Id.* The Commissioner adds no additional reasoning.

As the ALJ concedes, Plaintiff explained this chart note. Plaintiff did not state that he

hunts everyday—indeed, hunting every day is not legal. Plaintiff clarified that he told the doctor

that he did not want to put something scented on his skin daily because he hunts. He then

described his hunting—that he did it from the car, that his cousin drives, and that he uses a

modified rifle swivel stand to shoot from the vehicle. AR 513-14. He only hunted twice in the

year before the hearing. AR 514. He attempts to hunt a few times per year to help "keep sane."

AR 518. This limited attempt to perform a basic recreational activity is not a clear and

convincing reason to discount Plaintiff's subjective testimony. *See Reddick*, 157 F.3d at 722

(requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be

relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Further, nothing in the record suggests, nor does the RFC indicate, that Plaintiff cannot sit for more than two hours in the car. AR 478.

### b. Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Robbins*, 466 F.3d at 883; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2), (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). Because the Court rejects the ALJ's reliance on Plaintiff's activities, the Commissioner cannot solely rely on objective medical to discount Plaintiff's subjective testimony.

## C. Remedy

### 1. "Credit-as-True" Framework

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of the Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on

the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine whether a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true only because the ALJ made a legal error. *Id.* at 408.

### 2. "Credit-as-True" Analysis

#### a. Harmful Legal Error

The Commissioner concedes that the ALJ erred at step five of the sequential analysis due to the lack of substantial evidence to support the ALJ's findings. The Court concludes that the ALJ committed harmful legal error by improperly rejecting Dr. Holland's medical testimony and Plaintiff's subjective testimony. An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *see also Robbins*, 466 F.3d at 885 (noting that an error is harmless if it is "clear from the record the error was inconsequential to the ultimate non-disability determination"). Dr. Holland's and Plaintiff's

rejected testimony was consequential in determining Plaintiff's disability and thus a harmful legal error.

### b. Fully Developed Record and Utility of Further Proceedings

The Commissioner argues that the Court should not apply the "credit-as-true" doctrine because conflicts remain that require remand. The Commissioner contends that the opinions of the state agency reviewing doctors Neal E. Berner, MD, and Thomas W. Davenport, MD, were consistent with Plaintiff's objective medical evidence and inconsistent with his alleged symptoms and limitations as opined by Plaintiff and Dr. Holland. Although the opinions of the state agency non-examining consultants' conflict with Dr. Holland's opinion, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995), *as amended* (Apr. 9, 1996) (emphasis in original); *see also Matthew F. v. Kijakazi*, 2022 WL 2236342, at *10 (concluding that the mere existence of a conflicting opinions between the state agency reviewing physician and Plaintiff's treating physician "is not independently sufficient to create a significant conflict in the record); *Reis v. Berryhill*, 2019 WL 1219523, at *5 (D. Ariz. Mar. 15, 2019) ("[T]he the opinions of non-examining physicians are not, by themselves, substantial evidence to reject the opinions of examining or treating physicians."). Further, the opinion of Plaintiff's treating doctor (Dr. Holland) supported that Plaintiff cannot maintain employment. Thus, the Court finds no substantial ambiguities or conflicts regarding Dr. Holland's opinion.

Next, the Commissioner argues that the "credit-as-true" doctrine does not apply because the "ALJ raise[d] additional issues that require resolution" about Plaintiff's subjective testimony. The Commissioner does not, however, elaborate on why Plaintiff's subjective testimony creates ambiguity, nor did the Commissioner offer much substantive argument regarding Plaintiff's

testimony. After viewing the record as a whole, the Court finds no substantial conflicts or ambiguities in Plaintiff's testimony that require resolution by the ALJ.

Last, the Commissioner argues that further proceedings are necessary to resolve the transferability of skills. Although the transferability of Plaintiff's skills requires development if remanded for further proceedings, the Commissioner fails to recognize that if the Court credits Dr. Holland's medical opinion and Plaintiff's subjective testimony as true and finds no serious doubts, the Court must consider Plaintiff disabled. The further development of the record related to the transferability of Plaintiff's skills is therefore immaterial unless evidence is not credited as true.

Remanding this case for further proceedings to resolve conflicts or ambiguities would "constitute the sort of duplicative reassessments of credibility that the doctrine is intended to avoid." *See Garrison*, 759 F.3d at 1019-20 (quoting *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1398–99 (9th Cir. 1988)). The Commissioner is thus "not entitled to a [third chance] to justify his improper rejection of claimant symptom testimony and medical opinion." *Reis*, 2019 WL 1219523, at *5 (citing *Garrison*, 759 F.3d at 1021-22 (rejecting argument that a remand to allow ALJ to reconsider testimony he improperly rejected qualifies as "useful purpose")).

### 3.  Required Finding of Disability

Because the Court concludes that the record is free from conflicts and there is no useful purpose for further proceedings, the Court next considers whether the ALJ would be required to find Plaintiff disabled if the improperly discredited evidence were credited as true. *Dominguez*, 808 F.3d at 407. Taking the improperly rejected evidence as true, the record supports a finding of disability. Dr. Holland opined that Plaintiff would miss three days of work

a month. AR 470. The vocational expert testified that such absences would preclude competitive

employment, requiring a disability finding. AR 23-24, 425-25.

### 4. Serious Doubts as to Plaintiff's Disability

The Commissioner argues that evidence casts serious doubt on Plaintiff's disability

because of (1) objective medical evidence, (2) Plaintiff's improvement on medication, and

(3) the inconsistencies in Plaintiff's testimony about his hunting frequency. A court "may

remand on an open record for further proceedings when the record as a whole creates serious

doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security

Act." *Dominguez*, 808 F.3d at 408 (quotation marks omitted).

The Commissioner first argues that objective medical evidence casts serious doubt on

Plaintiff's disability. The Commissioner contends:

> Objective imaging findings generally showed mild to moderate
> degenerative changes in Plaintiff's cervical spine in 2017 and 2018
> (Tr. 334, 395-96), and normal findings in the thoracic and lumbar
> spine in 2019 (Tr. 754, 756-57). In addition, electrodiagnostic
> studies of the upper and lower extremities were normal (Tr. 300,
> 718). Physical examination findings often showed only mild
> reductions in range motion or muscle and grip strength in
> Plaintiff's right arm (Tr. 336, 362, 408, 424, 431, 743, 799), and
> only mild limitations in cervical range of motion (Tr. 463, 719,
> 784, 788, 799). Plaintiff also had full muscle strength in both legs
> (Tr. 337, 365, 743).

*See* AR 480-82.

Social security regulations, however, state that "[i]t is a characteristic of [CRPS] that the

degree of pain reported is out of proportion to the severity of the injury sustained by the

individual." SSR 03-2p. For this reason, objective medical evidence alone does not cast serious

doubt on Plaintiff's subjective testimony. *See Robbins*, 466 F.3d at 883 (lacking support

in objective medical evidence alone is not a sufficient reason to assign less than full credit to

Plaintiff's symptom testimony). Thus, objective medical evidence must be paired with additional evidence in the record to cast serious doubt on Plaintiff's disabilities.

Second, the Commissioner argues that Plaintiff's condition improved with medication. A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. § 416.929(c)(3). For example, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not inconsistent with disability."). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

Here, the ALJ relied on Dr. Holland's treatment notes from March 14, 2019. AR 734, 882. Dr. Holland opined that Plaintiff's "pain is fairly controlled with [a] regimen of gabapentin, tramadol[, and] ibuprofen. [Plaintiff] has been stable on this regimen for at least 2 years and it is allowing him to remain functional to meet shopping, meal preparation, [and] home care/home duties." *Id.* The Ninth Circuit's standard is clear—daily activities such as those listed by the ALJ do not undermine Plaintiff's subjective symptom testimony. Accordingly, Plaintiff's improvement on medication allowing minimal daily activities does not cast serious doubt on Plaintiff's disability.

The Commissioner further argues that Plaintiff's testimony on his hunting frequency casts serious doubts on Plaintiff's disability. For the reasons described in analyzing Plaintiff's subjective testimony, the Court does not have any serious doubt about Plaintiff's disability due to his hunting frequency.

Each element of the "credit-as-true" doctrine is met, and the Court has discretion to remand for an immediate calculation and payment of benefits. Based on Dr. Holland's opinion, a finding of disability and remand for benefits is appropriate. Further, "[d]elaying the payment of benefits by requiring multiple administrative proceedings that are duplicative and unnecessary" would only serve "to cause [Plaintiff] further damage—financial, medical, and emotional." *Varney*, 859 F.2d at 1399. The Court exercises its discretion and remands for a calculation of benefits.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS for an immediate calculation and payment of benefits.

**IT IS SO ORDERED**.

DATED this 19th day of October, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge
